## COOLIDGE *v.* MELVIN.

All conveyances, with a secret trust reserved to the vendor, are fraudulent and void as to creditors.

And, where the trust is shown, fraud is an inference of law that the court is bound to pronounce.

And it is immaterial whether the trust is express, or appears upon the face of the deed, or is implied from extrinsic circumstances.

Such trusts are proved to exist, where the conveyance is absolute on its face, but with an agreement, either verbal or in writing, for a reconveyance upon some terms;—

Or where, upon an absolute sale of chattels, the use and possession is retained by the vendor;—

Or where, in an assignment in trust for the benefit of creditors, the payment of an annual sum is reserved to the debtor, or he reserves the power of revocation or appointment;—

Or if the consideration of the conveyance, in whole or in part, is an obligation for the future support of the grantor;—

Or if, in case of an absolute sale of goods, it is agreed that the vendee shall sell them, and pay the proceeds, beyond a certain sum, to the vendor;—

In short, any secret trust whatever, either express or implied, by which the property is to be held, in any way, for the benefit of the vendor, is inconsistent with an absolute sale, and makes it, as matter of law, fraudulent and void as to creditors.

Upon these principles, it is held that a conveyance, by a person in debt, in consideration of $500, advanced by the grantee, it being but part of the value of the property, to be held in trust, for the use of himself and his wife during their lives, without being subject to their debts, and, after the death of the survivor, to go to their children, on repayment of the money advanced, is fraudulent and void as to creditors.

Where the property, which was situated in Massachusetts, was sold by the trustee, in pursuance of a provision contained in the original indentures, and the proceeds invested in the purchase of a farm in New-Hampshire, which was conveyed to him to hold as trustee under the same indentures, it was held that, being paid for by the avails of the other estate, and held by him as such trustee, the farm in New-Hampshire must be regarded as a substitute for the other, and as standing in the same relation to the original grantor's creditors.

It was also held that the trust being shown upon the face of the deed, and it appearing that the grantor was in debt at the time, the intent to defraud creditors was a conclusive presumption of law; and, therefore,

Coolidge *v.* Melvin.

the conveyance was void with respect to both existing and subsequent creditors.

And it was further held that where the trust is admitted, or shown by the instrument of conveyance, or otherwise made to appear, an actual intent to hinder, delay and defraud creditors, is an inference of law, which is as effectual to avoid the conveyance as to subsequent creditors, as if found by the jury.

Upon the extent of an execution upon land, in February, and an entry under it in the autumn of the same year, the creditor is entitled to the growing crop.

THIS was an action of trover for a quantity of corn, brought October 24, 1857; and from the agreement of the parties and copies of the papers exhibited, it appeared that by indentures between the plaintiff, John T. Coolidge, and Charles Coolidge, of September 1, 1841, the latter conveyed to the plaintiff his dwelling-house, in Lynn, Massachusetts; the indenture reciting that said Charles wished to settle the property on his wife and children; that he owed some debts; that the plaintiff had agreed to advance $500 to pay them, and would advance more, if needed, in consideration that Charles would settle the house in the way provided. The consideration for the conveyance is stated to be the $500 loaned and the "premises" above; and the covenants of the said John and the conveyance are alleged to be for the uses, intents and purposes following:

1. To permit the said Charles and wife and the survivor to occupy the premises without rent; and if not so occupied, that the plaintiff should lease it, and that he might sell it when he should think best.

2. In case of such sale, the plaintiff shall invest the proceeds as he thinks best, and the income of it, together with such rents as he may have received, shall be paid to said Charles and wife and the survivor; and after their decease, the property or proceeds to go to their children, after reimbursing the plaintiff for all expenses by reason of the premises and relating to the trusts.

3. In case of loss by fire, the plaintiff shall apply the insurance money to repair or rebuild, or in the way provided for the proceeds of sales, as he shall deem best; all to be held without being liable for debts or to the control of Charles or his wife — the plaintiff agreeing to execute the trusts; and on the same he advanced the $500.

Before December 13, 1845, the plaintiff, under this indenture, sold the property, and with the proceeds bought a place in Chester, of one Boynton, who conveyed it to him as trustee under the indenture, by deed, reciting that the Lynn property had been sold, and the proceeds applied to this purchase, the property to be held by the plaintiff, trustee as aforesaid, pursuant to said indenture, and this deed was recorded in the Rockingham county records, December 18, 1845. At the date of that deed, Charles Coolidge and wife moved upon that farm, and have lived there ever since up to the commencement of this suit.

April 9, 1846, another indenture between the same parties was made, and recorded in Chester town records, June 11, 1846, in which was recited the conveyance from Boynton to the trustee under the former indentures; that it was intended that the property and proceeds thereof should be settled upon said Charles' wife and children, without being subject to the debts or control of said Charles or his wife, and that said Chester property was purchased with the proceeds of the Lynn property, and to be held under the indentures; that said Charles and wife are now living on said place in Chester, and that said John has purchased sundry stock and other personal property, the use of which he gives to said Charles, on said farm, so far as may be necessary to make the occupation of the farm beneficial to him and his family, without transferring the property therein to him, or making it, or the proceeds thereof, in any way subject to his debts. And the parties covenant and agree that said

Coolidge *v.* Melvin.

Charles may occupy said farm, for the use and benefit of himself and family, together with said stock and other personal property, and such as said John may afterward place there, on condition:

1. That from the proceeds he shall keep the farm and buildings in good condition, pay the taxes and insurance, and expenses of carrying it on; and if the proceeds are not enough to pay the above and the expenses of supporting his family, he shall give notice to the plaintiff, but shall have no power to contract debts on account of the plaintiff; and the right to occupy the farm shall be subject to the will and discretion of the plaintiff, who shall at all times have a right to manage and control said property, real and personal, so as to be most beneficial for the wife and children of said Charles.

2. All products of said farm and increase of stock shall belong solely to the plaintiff, and be subject to the use and disposition of said Charles, for the support of the family, subject to the control of the plaintiff, who may at any time take possession of all his property to secure the same for the purposes set forth in said indentures; and the products and personal property put on said farm shall not be at any time subject to the debts of said Charles or his wife; and if he shall be guilty of any waste, or shall fail to account for the same in the manner herein intended and expressed, or shall attempt to apply it to a different purpose, or the same shall be attached on any writ or execution against said Charles, the plaintiff may take immediate possession of it.

3. No claim, by said Charles against the plaintiff, for carrying on the farm, shall be made; and the products shall belong to the plaintiff, subject to the use aforesaid.

Prior to July 15, 1856, the plaintiff had expended of his own money $587.85, in repairs of the Chester farm and building a barn thereon, and $475 for stock and utensils placed on the farm. On the same July 15, 1856, the

defendant sued said Charles in this county, and he was defaulted October term, 1856, of the Supreme Judicial Court, and on the 18th of February, 1857, the defendant levied his execution upon a part of said farm and set it off; and the corn sued for was afterward raised by said Charles on the part so set off, and was gathered and converted by the defendant when ready to harvest; and this suit was brought after demand upon the defendant.

At the time of the indenture of September, 1841, Charles Coolidge owed some debts, but the debt to this defendant did not then exist.

*Hatch*, for the plaintiff.

The legal estate of the land on which the corn mentioned in the declaration grew, was in the plaintiff, and the defendant took nothing by the levy of his execution against Charles Coolidge.

1. The conveyances from Charles Coolidge to John T. Coolidge, recited in the case, were not fraudulent as to creditors. A valuable consideration passed from the plaintiff to Charles Coolidge, and provision was made for the payment of all existing debts of Charles Coolidge. Our laws do not prohibit the voluntary conveyance of property, unless made in fraud of existing creditors, or with intention to defraud future creditors. *Smith* v. *Lowell*, 6 N. H. 69; *Carlisle* v. *Rich*, 8 N. H. 44; *Parsons* v. *McKnight*, 8 N. H. 35; *Smith* v. *Smith*, 11 N. H. 459; *Kendall* v. *Fitts*, 22 N. H. 1; *Jewell* v. *Porter*, 31 N. H. 34; *Low* v. *Carter*, 21 N. H. 633; *Marston* v. *Marston*, 21 N. H. 491; *Sanborn* v. *Goodhue*, 28 N. H. 48; 2 Kent's Com. 173; *Sexton* v. *Wheaton*, 8 Wheat. 229; *Picquet* v. *Swan*, 4 Mass. 443. The defendant was not a creditor of Charles Coolidge until long after the conveyances referred to were executed and recorded; and it is only as against existing creditors that the consideration of a deed is to be proved. *Kimball*

v. *Fenner*, 12 N. H. 248, 252; *Belknap* v. *Wendell*, 21 N. H. 175, 184.

2. It may be suggested that the terms of the deeds give to Charles Coolidge, as *cestui que trust*, a use executed in him by the statute of uses. *Upham* v. *Varney*, 15 N. H. 562. But this case is clearly distinguishable from *Upham* v. *Varney*, by the provisions of the deed of September 1, 1841, and April 9, 1846. In *Upham* v. *Varney*, the trust was simply that the trustee should permit the *cestui que trust* to occupy the property. "His duty was not to inter-fere, but to permit the *cestui que trust* to receive the in-come." And the decision of the court rests expressly upon that ground. But the court agreed that trustees "will take the legal estate where they have any discretion or control over the application of the money (p. 466); or where the seizin of the real estate is necessary to enable the trustee to execute the trust." See, also, the argument of the learned counsel for the demandant in that case.

Upon this subject, see, also, Shep. Touch. 505; 7 Bac. Abr., Uses & Trusts, H. 121, G. 113; *Silvester* v. *Wilson*, 2 T. R. 444; *Harton* v. *Harton*, 7 T. R. 652; *Shapland* v. *Smith*, 1 Brown Ch. 76 (Boston edition, 1844, note), and cases there collected; *Jefferson* v. *Moreton*, 2 Saund. 11, note 17; *Kendrick* v. *Beauclerk*, 3 B. & P. 178; *Goodrich* v. *Proctor*, 1 Gray 567; *Parker* v. *Converse*, 5 Gray 336; *Graves* v. *Graves*, 29 N. H. 129; *Norton* v. *Leonard*, 12 Pick. 152; *Merrill* v. *Brown*, 12 Pick. 216. The power of the plaintiff to sell and reinvest the property at his discre-tion, is utterly inconsistent with the idea that the *cestuis que trust* have any legal estate in the property. *Braman* v. *Stiles*, 2 Pick. 460.

The right of the plaintiff to sell the property, and to re-invest it at his discretion, must be understood to be one in which the wife and children of Charles Coolidge have a present interest. If a creditor of Charles Coolidge may fix the property by a levy, the wife and children will be

deprived of the benefit of more advantageous or more convenient investments, which the trustee might otherwise be induced to make, with a view to their profit or accommodation. Under the deed of April 9, 1846, Charles Coolidge was a mere tenant at the will of the plaintiff, and so he is, substantially, by the deed of September 1, 1841. But where the estate is less than a freehold, the statute does not execute the use. 6 Com. Dig. 429. The intention of the parties that the legal estate shall not be in Charles Coolidge, is apparent in all the deeds and in all their dealings. And it seems settled " that all limitations that tend to the provision of the family, and to secure them against contingencies which are within the parties' own immediate prospect, are to be favored. 7 Bac. Abr. 105, Uses & Trusts, G. 2; *Low* v. *Carter*, 21 N. H. 433; *Doe* v. *Biggs*, 2 Taunt. 111. The obvious intention of the parties, running through all their deeds, is, that the wife and children of Charles Coolidge shall have a present interest in the income of the property, during his life as well as after. They are to derive their present support from it, and Charles Coolidge is not at liberty to apply the income to his own support or to other uses. Hence it is clear that it can not be taken for his debts.

By the deeds, the plaintiff was entitled to possession of the crops raised on the land, on demand. Demand having been made, trover is the proper form of action. *Riley* v. *Boston Water Power Co.*, 11 Cush. 11.

The plaintiff does not waive, but insists upon the objections taken to the defendant's levy.

*H. F. French*, and *C. H. Bell*, for the defendant.

1. The plaintiff can not maintain this action, because he had neither possession nor right of possession of the property described in this writ. *Jones* v. *Sinclair*, 2 N. H. 319.

2. Charles had, as *cestui que trust*, an attachable interest

in the land which passed to the defendant the right of possession, by his levy, and the crop afterward raised on it was the defendant's. The interest of a *cestui que trust,* whether executed by the statute of uses or not, whether a freehold or less, is attachable under our statute. *Upham* v. *Varney,* 15 N. H. 462, and cases there cited in opinion of Gilchrist, J.; *Pembroke* v. *Allenstown,* 21 N. H. 115; *Pritchard* v. *Brown,* 4 N. H. 403. Even though the trustee have power to sell in his discretion, the *cestui que trust* having in this case a right of possession until such sale, his interest, taken by this creditor, can only be defeated by such sale. The plaintiff is bound to " permit the said Charles," &c., " to occupy without rent," if he pleases, and can only defeat that right by a sale. That right was a valuable, assignable, attachable interest in real estate. *Braman* v. *Stiles,* 2 Pick. 464.

3. The conveyance in trust is an express fraud on creditors. It is not a provision merely for the wife and children of Charles, but a conveyance for his own use for life, for the avowed object of placing his " property" so that it shall not be liable for his debts, and so to prevent, hinder and delay his future creditors.

4. The indenture affords conclusive evidence of a secret trust, which avoids the trust in this plaintiff as to creditors. The estate in Charles is merely that of a resulting trust of land, paid for with his money and conveyed to this plaintiff. *Scoby* v. *Blanchard,* 3 N. H. 170; *Pritchard* v. *Brown,* 4 N. H. 397. The indenture contains provisions not contained in the deeds. Being no part of the deeds, they are secret trusts which are conclusive evidence of fraud, and in this case avoid not the grant, which is from a third party, but the trusts attempted to be created, leaving the fee in this plaintiff, and the beneficial interest as a resulting trust in Charles. Such trusts are void as to subsequent creditors. *Paul* v. *Crooker,* 8 N. H. 290; *McConihe* v. *Sawyer,* 12 N. H. 403; *Towle* v. *Hoit,* 14 N. H. 61.

BELLOWS, J. The main question in this case is whether the conveyance by Charles Coolidge to the plaintiff was fraudulent and void in respect to subsequent creditors, and bearing upon this question are numerous decisions in this state, arising under the statute of 13 Eliz., ch. 5, in some of which, and especially in *Coburn* v. *Pickering*, the law has been discussed with signal ability. In order to make a correct application of the principles established to the case before us, it may be useful to review briefly these decisions.

In the case of *Coburn* v. *Pickering*, 3 N. H. 415, it was decided, upon great consideration, that any trust attending a sale of chattels, either express or implied, is a fraud with respect to creditors, and that if the vendor retain possession after an absolute sale, it is always *primâ facie*, and if unexplained, conclusive evidence of a secret trust. In this case, an innkeeper, who was insolvent, sold his goods and household furniture to Delano, his brother-in-law, in part payment of a debt which he owed him, and after the sale, and before removal of the goods, it was agreed that they should remain and be used in the tavern; but to secure them against attachment by other creditors of the vendor, the brother-in-law leased them to the plaintiff, who was the vendor's hired man, for six months, the object being merely to give to the vendor and his family the use of the goods. In examining the question *Richardson*, C. J., assumes that the consideration was adequate, and that the only question was whether the sale was *bonâ fide* or not, in respect to creditors. At the trial, the court being of the opinion that the lease to Coburn (the plaintiff) must be regarded as the same in fact as a lease to the vendor, and as part of the contract of sale, directed a verdict for the defendant; and this ruling, on full consideration, was sustained. The point directly established was, that the possession by the vendor, being inconsistent with an absolute sale, is, if unexplained, con-

Coolidge *v.* Melvin.

clusive evidence of a secret trust, and therefore as matter of law the sale was not *bonâ fide.* And the court held that there was nothing that could have been submitted to the jury, but that the trust being shown by the retention of the possession, fraud was an inference of law which the court was bound to pronounce. This is fully sustained in *Parker* v. *Pattee,* 4 N. H. 176, where the goods were conveyed by an absolute bill of sale, but by an agreement between the parties were to be sold, and the proceeds beyond a certain sum paid to the vendor.

In *Smith* v. *Lowell,* 6 N. H. 67, a debtor in embarrassed circumstances made an absolute conveyance of his real estate, and continued in possession for a long time. The court having ruled that a good consideration must be shown or the possession explained, the tenant offered evidence tending to show that the grantor was indebted to the grantee at the time of the conveyance, and requested the court to charge the jury, that if the conveyance was made in good faith to pay or to secure by way of pledge this indebtedness, it was valid. But the court declined so to instruct the jury, although the demandant became a creditor long after the conveyance by the debtor, but instructed them that as the conveyance was absolute on its face, they must be satisfied that it was made in payment and satisfaction of the debt. These instructions were sustained upon full consideration ; the court (*Richardson,* C. J.) holding that a secret understanding that on payment of the debt the land should be reconveyed, would be a secret trust that would render the conveyance void, and it is expressly held that it would be void, as against those who became creditors after the conveyance. In deciding this point the judge places no stress upon the fact that the grantee was insolvent, but holds that the law does not permit debts to be secured in this manner, and urges that if courts should give the least countenance to it there would be no end to the embarrass-

ments in which creditors would be involved to secure their debts. At the same time it is said that there are cases in which a mere voluntary conveyance may be sustained against creditors, as in the case of a parent not embarrassed making suitable provision for a child.

In *Paul* v. *Crooker*, 8 N. H. 288, the agreement that the vendor might retain possession of the goods so long as the vendee should see fit, paying interest on the price for their use, was held to be a secret trust that would avoid the sale as to subsequent creditors. *Richardson*, C. J., says that such a conveyance is quite as likely to defraud subsequent as existing creditors ; and this, we think, is obviously true, inasmuch as the apparent ownership which a debtor is thus enabled to assume, would be quite likely to give him a credit to which he was not entitled ; and *Richardson*, C. J., says (page 290), that "it has been settled in this state that such a conveyance is void with respect to subsequent creditors," and he cites *Smith* v. *Lowell*.

In *Winkley* v. *Hill*, 9 N. H. 31, an absolute conveyance by a person in debt, with an understanding that on repayment of the price the land should be reconveyed, is fraudulent and void as to creditors. *Richardson*, C. J., says : " As such trusts are in their nature calculated to delay, hinder and defraud creditors, the law, without stopping to learn the real motives and intentions of the parties, denounces all such trusts as frauds that render void the contracts under which they arise. Nor are the grounds and reasons, on which such trusts are thus denounced, at all unsatisfactory. It must be extremely rare that they can be necessary to answer any honest purpose. What fair and proper motives can any man who is in debt have to adopt a mode of conveyance that carries falsehood on the face of it, while truth lies hid and concealed beneath ?" And he says, further, that " it is because such trusts are calculated to deceive and embarrass creditors, because they are not things to which honest debtors can have

Coolidge *v.* Melvin.

occasion to resort in sales of their property, and because they are the means which dishonest debtors commonly and ordinarily use to cheat their creditors, that the law does not permit a debtor to say that he used them for an honest purpose in any case."

In *Tefft* v. *Walker*, 10 N. H. 150, the obligation to reconvey was by bond executed at the same time, and no distinction was recognized between existing and future creditors.

In *Smith* v. *Smith*, 11 N. H. 459, it was held that a conveyance of a farm for half its value in money, and a bond for the support of the grantor and his wife during life, for the rest, was fraudulent and void as to existing creditors. *Parker*, C. J., says it comes very much within the reason and the principles that govern cases where there is a secret trust, though it is not technically a reservation or secret trust, but an attempt to secure to the grantor a support during life out of his property, to the prejudice of his creditors.

In *McConihe* v. *Sawyer*, 12 N. H. 403, it is held that subsequent creditors may avoid a conveyance for fraud.

In *Page* v. *Carpenter*, 10 N. H. 77, the doctrine of *Coburn* v. *Pickering* is fully recognized and sustained. Here the possession of goods was retained by the vendors after an absolute sale ; and *Parker*, C. J., observes that this gave them an opportunity to treat the property as their own after the sale, and thereby obtain a false credit.

In *Towle* v. *Hoit*, 14 N. H. 61, it is held that a deed of land, with a secret trust, reserving a substantial interest to the grantor, is fraudulent as to creditors, and void.

In *Ladd* v. *Wiggin*, 35 N. H. 421–426, it is held that a conveyance of land, absolute on its face, with an understanding that it should be reconveyed, on payment of the sum for which it was conveyed, with interest, is void as to subsequent creditors.

By the law of New-Hampshire, as shown by these cases, all conveyances, with a secret trust reserved to the vendor,

are fraudulent, and void as to creditors; and where the trust is shown, fraud is an inference of law that the court is bound to pronounce. Such trusts are proved to exist, where the conveyance is absolute on its face, but with an agreement, either verbal or in writing, for a reconveyance upon some terms; or where, upon such absolute sale of chattels, the use and possession is retained by the vendor. So, if the consideration of the conveyance in whole or in part be an obligation for the future support of the grantor. So in case of an absolute sale of chattels, if it be agreed that the vendee shall sell them, and pay the proceeds beyond a certain sum to the vendor.

In short, any secret trust whatever, either express or implied, by which the property is to be held in any way for the benefit of the vendor, is inconsistent with an absolute sale, and makes it, as matter of law, fraudulent and void as to creditors. And this is totally independent of any question concerning the adequacy of the consideration, but it stands upon the ground that such trusts are conclusive proof of the want of good faith in the conveyance; the statute of 13 Eliz., ch. 5, which is adopted in this state, and under which these questions arise, requiring that conveyances of both lands and goods, to be valid against creditors, must be upon good consideration, and, also, *bonâ fide.*

The ground, then, upon which such conveyances are, as matter of law, denounced as fraudulent, is that they are made to delay, hinder and defraud creditors; and that, on establishing such trust, the fraudulent intent is conclusively presumed, and the parties who resort to it shall not be heard to deny such intent. Such conveyances, then, must be regarded as fraudulent within the provisions of the statute of 13 Eliz., and, therefore, void as to creditors.

What, then, is the character of the conveyance in question, and the nature of Charles Coolidge's interest in the Chester farm, with respect to his creditors.

At the time of the arrangement between the plaintiff and his brother, on the first of September, 1841, the latter was the owner of a dwelling-house at Lynn and his stock in trade, the value of which does not appear, and he owed debts to a substantial amount, but, as recited in the indentures, to an amount much less than the stock in trade. By those indentures, which were duly recorded in the Essex registry, the said Charles, in consideration of $500, then advanced by the plaintiff to aid him in paying his debts, and his willingness to advance a further sum, if needed, for that purpose, and of the further stipulations therein contained, conveyed to the plaintiff the aforesaid dwelling-house, to hold in trust for the use of the grantor and wife, with the power to sell and re-invest the proceeds as the plaintiff should think proper, but giving the grantor and wife the income thereof; and providing, also, that on the death of the said Charles and his wife, the property, after reimbursing the expenses incurred by the trustee, should go to their children; and further providing that the property and money received therefrom should be applied in the manner aforesaid, without being subject to the debts or control of the grantor or his wife. The substance of the arrangement appears to be, that, in consideration of the sum of $500, the said Charles conveyed the property to the plaintiff, in trust for the use of himself and wife during their lives, without being subject to their debts, and, after the death of the survivor of them, to go to their children, on repayment of the money advanced.

Under the laws of New-Hampshire, such a conveyance, assuming the $500 to be a part only of the consideration, would be, with respect to creditors, fraudulent and void, inasmuch as it provides for holding the property for the use and benefit of the grantor. On this point the case of *Smith* v. *Smith*, 11 N. H. 459, is decisive, and it comes within the principles established in *Coburn* v. *Pickering*, 3 N. H. 411. It is true that part of the consideration is

good, but a part being bad, as a fraud upon creditors, the whole conveyance was void as to them, as held in *Smith* v. *Smith*, before cited. It does not, indeed, directly appear what was the value of the Lynn property, although the case finds that the Chester farm was purchased with the avails of it; and the consideration in Boynton's deed being stated at $1200, it may be assumed that the Lynn property was worth more than the $500 advanced by the plaintiff, and that the excess went into the purchase of the Chester farm. In the case of *Harris* v. *Sumner*, 2 Pick. 129, there was an assignment of property in trust, to pay, first, a debt to the assignees, then a sum of money to the assignor, and the rest to be divided among his creditors. The court held, as a matter of law, the trust appearing on the face of the deed, that, as to creditors, the assignment was wholly void, though it was contended that the provision for the assignor ought not to affect the rest. The court put the decision upon the ground of fraud, and say that the plaintiffs, the assignees, became parties to a deed, which, upon its face, appears to be made with intent to delay, defeat or defraud creditors; and the judge denounces in strong terms the idea that the assignees should be allowed to hold any thing under it. In that case, the trustee was to hold the property in trust, to pay part of it to the assignor. In the case before us, he was to pay the entire income to the grantor and his wife, or allow them to take it; and in both cases the trust appears upon the face of the deeds.

In *Slater* v. *Dudley*, 18 Pick. 373, a debtor, for the consideration of $1,000, as expressed in the deed, conveyed a tract of land to his son, and the deed was on condition that the son should maintain his father and mother. The court held that it was *primâ facie* fraudulent, but might be explained, by showing that the value of the estate was paid, and the agreement for support was, therefore, gratuitous.

The statute of 13 Eliz., ch. 5, is in force in Massachusetts, as it is in New-Hampshire, and under it, it is

held that a conveyance, made upon a secret trust and with a fraudulent intent, may be avoided as well by subsequent as by previous creditors. *Parkman* v. *Welch*, 19 Pick. 231, 237; *Damon* v. *Bryant*, 2 Pick. 411. A conveyance, by an embarrassed debtor, to secure property from attachment, though it was supposed to be better for the creditors, and it was intended ultimately to pay them, is void under the statute of 13 Eliz. *Kimball* v. *Thompson*, 4 Cush. 446. In *Jackson* v. *Parker*, 9 Cow. 547, it is decided that a conveyance of land, in consideration of an agreement to support the grantor and family, is fraudulent and void as to creditors. In *Mackie* v. *Cairns*, 5 Cow. 547, a merchant, in failing circumstances, assigned his property to trustees, to pay certain creditors, and to pay a certain sum, annually, to himself, and it was held that the assignment was fraudulent and void *in toto* as to creditors. So in *Hyslop* v. *Clarke*, 14 Johns. 458, it was held that an assignment to C., in trust to pay his debt, and then to such creditors as should discharge the assignor, and if any should refuse to make such discharge, then to such as the debtor should appoint, was fraudulent and void. So is *Learing* v. *Brinkerhoff*, 5 Johns. Ch. 332, and *Bond* v. *Smith*, 4 Dallas 76. So if the conveyance contain a power of revocation, or a power to mortgage, it will be held fraudulent as to creditors. 3 Co. 80, note *n*. See note B to *Twyne's Case*, 3 Co. 81; *Stone* v. *Grubham*, 2 Bulst. 218.

In *Taylor* v. *Jones*, 2 Atk. 600, a bill was brought by creditors, to be paid their debts out of stock vested by the husband in trustees, for the benefit of himself for life, of his wife for life, and afterward for the benefit of children. Lord *Hardwicke* decreed the deed of trust to be void as against subsequent as well as existing creditors. In giving the opinion, Lord *Hardwicke* said: "Here is a trust left to the husband, in the first place, under this deed, and his continuing in possession is fraudulent as to the creditors (the plaintiffs); and it is very probable that

the creditors, after the settlement, trusted Edward Jones, the debtor, upon the supposition that he was the owner of this stock, upon seeing him in possession." See *Stillman* v. *Ashdour*, 2 Atk. 477.

In *Fitzer* v. *Fitzer*, 2 Atk. 511, the deed was set aside because it was made for the benefit of the husband; and the court say "it is certain that every conveyance of the husband that is voluntary, and for his own benefit, is fraudulent;" and, further, "we consider it as an assignment which the husband himself may make use of to fence against creditors, and, consequently, it is fraudulent." In *Peacock* v. *Monk*, 1 Ves. 127, a deed containing a power of revocation was set aside; see, also, *Walker* v. *Burrows*, 1 Atk. 93; *Townsend* v. *Windham*, 2 Ves. 1; *Sexton* v. *Wheaton*, 8 Wheat. 229; *Howe* v. *Ward*, 4 Greenl. 195, 204; *Hinde's Lessee* v. *Longworth*, 11 Wheat. 199.

It being seen, then, that the conveyance of the Lynn property was fraudulent and void as to creditors, the next question is, whether the title to the Chester farm stands upon any different ground. It appears that, under the power conferred by the indentures upon the plaintiff, he sold the Lynn property, and with the avails of it purchased the Chester farm, which was conveyed to him by deed of December 13, 1845, to hold as trustee, pursuant to the indentures of September 1, 1841, which are referred to as recorded in the Essex registry, and stating that it was to be recorded in the registry of the county of Rockingham; and stating also that the estate in Lynn had been sold, and the proceeds applied to the purchase of this property. By this arrangement the Chester farm, being paid for with the proceeds of property which, as respects the creditors of Charles Coolidge, must be regarded as belonging to him, was substituted for the Lynn property, and, for aught we can see, it was held in the same way. In fact, the Chester farm was paid for out of a fund, which, as respects the creditors of Charles Coolidge,

belonged to him; and, therefore, on the conveyance of the Chester farm to the plaintiff, a trust resulted to the said Charles, of which his creditors could avail themselves.

So far as respects the essential character of the trust, as shown in the papers, the agreement of April 9, 1846, makes no material change, although it enlarges and defines with more distinctness the extent of the trustee's control over the farm and its proceeds, and recites the object of the indentures of September 1, 1841, to be to settle the property, and the proceeds thereof, upon the wife and children of said Charles. Yet it is distinctly provided that the said Charles Coolidge may occupy the farm, for the benefit and use of himself and family, and that the products of the farm and stock shall belong to the plaintiff, as trustee, but subject to the use and disposition of said Charles, for the support of his family, with the provision that the plaintiff may, at any time, take possession of all the property, to secure the same for the purposes set forth in said indentures; and especially giving him the right to take possession, if the said Charles shall attempt to apply the property to any use or purpose different from what is expressed in the agreement, or if the same shall be attached on any writ or execution against the said Charles. Upon the whole, it is quite apparent that the object of the conveyance and the subsequent agreement was to place the property of the debtor beyond the reach of his creditors, and still to give him the substantial use and income of it.

There is certainly nothing of the character of an actual purchase by the plaintiff, for he neither paid or professed to pay the full value of the property; but it was substantially a conveyance by a person in debt, without adequate consideration, to hold the property in trust for the grantor and his family. Such a conveyance is, we think, neither on good consideration, nor *bonâ fide.* Had it been of the character of a provision for a wife or child, and so for the

consideration of love and affection, another question would have been raised. But the conveyance was substantially in trust for himself, although the wife is named; and if such a conveyance can be sustained, we see nothing to interfere with the invention of a mode of conveyance that shall enable a purchaser of land to hold it free from the inconvenient claims of creditors, even when he has paid a money consideration to the extent of its full value; or if already purchased and conveyed in the usual way, to enable him to change the terms so as to exclude his creditors. To give the least countenance to such a doctrine, would be to arm the dishonest debtor with a power which his creditors would find it difficult to meet.

In this case the effort to give the arrangement the character of a provision for the wife and children is quite apparent; but that is nevertheless clearly subordinate to the purpose of reserving the use to the debtor himself. The arrangement, both under the first and second indentures, very clearly contemplates that the said Charles Coolidge was to remain in possession of the property and to cultivate and carry it on, dispose of the products, and apply the avails to the support of his family. If, in doing so, he should anticipate those products, and buy necessaries for himself and family upon credit, and in due time pay therefor out of such products, it would hardly be contended that this would be such a misapplication of the products, even under the second indentures, as would call for the interference of the trustee. Should he, however, do so, and attempt to wrest from a creditor the fund devoted to the support of the said Charles and his family, and upon the strength of which such creditor had trusted him for necessaries, it would be palpably unjust and dishonest. And yet such power is attempted to be put into the hands of this plaintiff by the second indenture, and for aught that appears may be that which is attempted to be exercised in this case. Such an arrangement is well

Coolidge *v.* Melvin.

calculated to deceive and defraud future creditors by giving to the debtor a credit, to which, under the agreement, if enforced, he would by no means be entitled. It would, indeed, be more likely to deceive and defraud future than existing creditors, as was held in *Paul* v. *Crooker*, 8 N. H. 288, where, upon an absolute sale of goods, possession was retained by the vendor.

As to existing creditors, there can be no doubt that such a conveyance is void. This is distinctly settled in *Smith* v. *Smith*, 11 N. H., before cited, as well as in numerous other cases. Nor would it be otherwise, if, under the circumstances of this case, the conveyance had been for the consideration of love and affection, and as a provision for a wife or child. So, too, such a tenure as is attempted to be created here, by which it is sought to give a man the entire use of property during his life, and at the same time to exclude his creditors from all access to it, is contrary to sound policy and to the well established doctrines of the law. Even in the case of a grant or devise of property to be held in trust for another, to pay him the rents and profits for his support and maintenance, without being subject at any time to his debts, it is held that his creditors may nevertheless reach it, and upon his bankruptcy it will, in England, pass to his assignee. And in no way can such a restriction be made effectual but to provide that in case the *cestui que trust* becomes insolvent, his interest shall cease and go to another. For so long as he is entitled to receive such rents and profits, they are liable, in case of his insolvency, to be taken by his creditors, that being an incident that no terms of restriction can take away. 2 Story's Eq. 974, a, and cases cited, where it is said by Judge *Story* that the policy of the law does not permit property to be so limited that it shall continue in the enjoyment of the bankrupt, notwithstanding the bankruptcy. So is *Brandon* v. *Robinson*, 18 Ves. 429, and cases cited; also *Hallett* v. *Thompson*, 5 Paige Ch. 583,

and *Mebaur* v. *Mebaur*, 4 Ired. Eq. 131, where the cases are considered and the law ably stated by Judge *Ruffin;* *Graves* v. *Dolphier*, 1 Sim. 66 ; *Piercy* v. *Roberts*, 1 Myl. & K. 4 ; *Green* v. *Spicer*, 1 R. & Myl. 395. So is *Snowdon* v. *Dales*, 6 Sim. 524. In some of these cases, as in *Piercy* v. *Roberts*, and *Snowdon* v. *Dales*, a discretion was given to the trustee in respect to the payment of the income ; but it was held that it made no difference, and in *Piercy* v. *Roberts*, Sir John *Leach* said that the discretion of the executors determined by the insolvency of the son, and the legacy passed by the assignment ; for the insolvent being substantially entitled to the legacy, the attempt to continue him in the enjoyment of it, notwithstanding his insolvency, was in fraud of the law.

Such being the law in respect to restrictions attempted to be imposed in the cases of gifts or conveyances of property, in which the *cestui que trust* had no previous interest, and for which he paid no consideration whatever, it would be difficult to find any ground to sustain such a restriction, where the *cestui que trust* himself undertakes to impose it upon his own property, or that for the conveyance of which he pays the consideration. Such an attempt might well be regarded as in fraud of the law, and as a conclusive proof of a fraudulent intent to defeat creditors.

In the light of these principles, the debtor, Charles Coolidge, must be regarded as the substantial owner of the farm and its profits, with respect to his creditors.

It is true, it is contended that provision was made for the payment of Charles Coolidge's debts, and therefore he is not to be regarded as indebted, at the time of the conveyance, in any such sense as to affect it. Had this been a conveyance in consideration of love and affection, and as a provision for a wife or child, the suggestion would deserve serious consideration. But even in that case the court would hesitate to hold that the payment of the $500

to the debtor, and a promise to advance more, if needed, to pay the debts, would essentially alter the character of the transaction. Over that money and the provision of the plaintiff, the creditors could have no control, and the grantor as to them would still be left indebted to a substantial amount. *Gunn* v. *Butler*, 18 Pick. 252.

In regard to voluntary settlements as against creditors, and to what extent a party must be indebted at the time, to defeat them, there is much confusion in the adjudged cases. The doctrine of Chancellor *Kent*, in *Reade* v. *Livingston*, 3 Johns. Ch. 481, is that such settlements are presumed to be fraudulent as to existing debts, without any regard to their amount, or the extent of the property settled, or the circumstances of the party, and that no circumstance will permit those debts to be affected by the settlement, or repel the legal presumption of fraud. These views are sustained by numerous authorities cited in that opinion, and also by many others cited in 2 Kent's Com. 441, 443, and notes.

On the other hand, numerous cases hold that to justify such a presumption it must appear that the party, in the language of the different cases, was "insolvent," "embarrassed," or "largely indebted." The cases bearing in this direction are collected in Story's Eq., secs. 352–365, and notes, and in 2 Kent's Com. 441–443; *Lush* v. *Wilkinson*, 5 Ves. (Sumner's Ed.) 384, and notes. And the tendency seems to be to hold this is a question for the jury to determine whether the indebtedness was of such a character and extent as to afford a reasonable inference of fraud.

It is not, however, necessary to settle this question; because we do not regard this as a provision for a wife or child, but as a conveyance in trust for the use, substantially, of the grantor during his life, which stands upon a footing entirely different from a settlement in favor of a wife and children. In the latter case the consideration is

deemed to be good, and it arises from the duty of making suitable provision for those who are bound to him by the ties of affection, and whom he is bound to support. In the case before us the consideration is not good, the money advanced being but a part of the value, and the rest having no other consideration than a provision for the grantor himself; and, therefore, a part being fraudulent as to creditors, the whole must be so deemed.

Upon the whole, we are of the opinion that the deeds disclose upon their face a trust to the debtor, Charles Coolidge, from which arises an inference of fraud, which the court is bound to pronounce. The trust, to be sure, is express, and appears in the instrument of conveyance, but is none the less effective on that account to defeat it. Such is the doctrine of many of the cases before cited; as *Coburn* v. *Pickering*; *Harris* v. *Sumner*, 2 Pick. 129; *Slater* v. *Dudley*, 18 Pick. 373; *Mackie* v. *Cairns*, 5 Cow. 547; *Hyslop* v. *Clarke*, 14 Johns. 458; 3 Co. 80, note *a*. In these cases, except *Coburn* v. *Pickering*, the trust appeared on the face of the instrument of conveyance, and they were held on that account to be fraudulent and void. So in *Sturtevant* v. *Ballard*, 9 Johns. 336. So in *Twyne's Case*, 3 Co. 81, where it is said every trust is either express or implied;—an express trust is where, in the gift or upon the gift, the trust by word or writing is expressed.

As has been before remarked, this conveyance, with respect to existing creditors, was clearly void, but it is contended that, as to subsequent creditors, it is valid. If, however, the actual purpose to defraud existing creditors be found, it will no where be denied that the conveyance would be void even as to future creditors.

The question, then, is whether such fraudulent purpose is found, or is to be conclusively presumed from the admitted facts. In the cases where fraud is conclusively presumed, as against existing creditors — as where a conveyance is made by a person in embarrassed circumstances,

without consideration, or no other consideration than that of blood; or an absolute conveyance is made to secure a debt; or an assignment is made by an insolvent person, reserving a beneficial use to himself, or reserving the power of revocation or appointment; or, on an absolute sale of chattels, the possession is retained by the vendor; the conveyances are held to be void under the statute, upon the ground that the fraudulent intent has been established, and the effect is the same, and for the same reasons, as if the fraud was found by the jury. It is true that, in some of the cases named, an actual intent to defraud may not have existed in a given case, as in the case of an absolute conveyance to secure a debt; yet it is found, by experience, that these circumstances and modes of conveyance denote a fraudulent purpose with such a degree of certainty as to justify a conclusive presumption of fraud; or, in other words, of an intent to hinder, delay, and defeat creditors. The effect of such legal inference from facts proved or admitted, is to establish an actual fraudulent intent — actual bad faith; and, in most cases, the inference is well founded; otherwise, it could not be justified. The truth is, this inference is made only in those grosser cases where some prominent and decisive incidents give plain tokens of the fraudulent intent, and from which a jury ought to find its actual existence. Accordingly, it is held that, in such cases, the conveyances are void both as to antecedent and subsequent creditors. This is shown by the cases, already cited, of conveyances absolute on their face, but merely designed to secure a debt; an absolute sale of chattels and possession retained by the vendor; which are held to be fraudulent and void as to subsequent creditors. *Smith* v. *Lowell*, 6 N. H. 67; *Paul* v. *Crooker*, 8 N. H. 290; *Ladd* v. *Wiggin*, 35 N. H. 421; also, *Coburn* v. *Pickering*, 3 N. H. 411; *Winkley* v. *Hill*, and *Page* v. *Carpenter*, before cited. In both of these cases the stipulation to reconvey and retaining posses-

sion of the goods, established the trust, and avoided the conveyances with respect to subsequent creditors. In the case before us, a similar trust is shown, and we are of the opinion that the effect must be the same upon the conveyance, with respect to this defendant. The purpose to defraud creditors, the actual bad faith being shown to exist, it can not be material whether it be found by the court, as a judgment of law, from unmistakable indications, or by the jury from incidents less decisive and prominent, but, perhaps, more numerous. In both cases the *malâ fides* is shown, and its effect to taint and render void and of none effect the conveyance, as to all classes of creditors, is the same. Nor is it material whether the intent was to defraud all creditors, both existing and future, or not, or all existing creditors. If the actual intent was to defraud any creditor, the conveyance is false and covinous, and void as to all, both present and future. *McConihe* v. *Sawyer*, 12 N. H. 403.

Some confusion exists in the books as to the effect of what is called fraud in law and fraud in fact upon the rights of future creditors, and some of it may have arisen from the fact that at common law, and before the statute of 13 Eliz., ch. 5, it was at least doubtful whether an after creditor could avoid a fraudulent conveyance in any way, or upon any ground. In 2 Bac. Abr., Tit. Fraud, C, it is distinctly laid down that he could not; and so in Fonbl. Eq., ch. 4, sec. 13, note *a*, citing *Twyne's Case*, 3 Co. 83, *a; Upton* v. *Bassett*, Cro. El. 444; Dyer 294, 295. But under this statute, which Lord *Coke* (in Co. Litt. 290, *b*) calls "a right profitable statute," there is now no distinction, in cases of actual fraud, between existing and subsequent creditors; although, so late as in 1824 in Massachusetts, the point was left undecided in *Damon* v. *Bryant*, 2 Pick. 411.

Now, however, the doctrine is well established, and applies even in cases of conveyances for love and affection,

Coolidge *v.* Melvin.

where there was a fraudulent intent.   *Lush* v. *Wilkinson,* 5 Ves. (Sumn.) 384, 387, 388, and notes.   Again, in a conveyance for the consideration of blood, it has been said that it can not be set aside by subsequent creditors without showing actual fraud, and that it is not enough to prove indebtedness at the time, but that it must be left to a jury to say whether, upon a consideration of the extent and nature of the indebtedness, the means retained by the grantor and all the circumstances of the case, there was actual fraud or not.   Upon this point the authorities are not altogether consistent, but whatever may be the true doctrine, it must be borne in mind that these are not cases of secret trusts, but cases where, for a good consideration, the whole property is conveyed without any trust to the grantor, either express or implied.   And the subsequent creditor may, in these cases, be required to prove actual fraud by the verdict of a jury, without trenching upon the doctrine, that where the trust is established the fraud is an inference of law.

In *Twyne's Case,* it is laid down that fraud is " always appareled and clad with a trust, and a trust is the cover of fraud."   So it was resolved, in that case, that " notwithstanding here was a true debt due to Twyne, and a good consideration of the gift, yet it was not within the proviso of the act of 13 Eliz., by which it was provided that the said act shall not extend to any estate or interest in lands, &c., goods and chattels, made on a good consideration and *bonâ fide;* for although it is on a true and good consideration, yet it is not *bonâ fide,* for no gift shall be deemed to be *bonâ fide* within the said proviso which is accompanied with any. trust."   So it is said, again, " every deed made on a trust is out of this proviso."

If, then, the trust is made to appear, the fraud is a judgment of law, and must be pronounced; and there may well be a distinction between such cases and conveyances in consideration of blood, where there is no trust

Coolidge *v.* Melvin.

reserved. In *Kendall* v. *Fitts*, 22 N. H. 1, *Eastman*, J., recognizes a distinction between fraud in law and fraud in fact, in their effects upon the rights of subsequent creditors, and cites several authorities to the point; but it will be observed that, so far as they tend to sustain that view, they are cases of conveyances for the consideration of blood, and not attended with any trust. On the other hand, the same judge distinctly recognizes the doctrine of *Coburn* v. *Pickering*, that, the "trust" being admitted or proved, the fraud is an inference of law which the court is bound to pronounce. It would, indeed, be absurd to contend that where the intent to hinder, delay and defeat creditors was so apparent and palpable, upon the face of the instrument of conveyance, that there was nothing to be left to the jury, the effect of the inference which the court was bound to make should be limited to existing creditors.

It appears, by the case, that the defendant, being a judgment creditor of Charles Coolidge, on the 18th day of February, 1857, extended his execution upon a part of the Chester farm, and set it off; and that the corn in question was raised by said Charles Coolidge upon the land so set off, in the following season, and when ready to harvest the defendant gathered it, and converted it to his own use. It does not distinctly appear that the said Charles Coolidge remained in possession of the land until the corn was grown; but, assuming it to be so, the question arises whether the tenant has a right to the crop as against the creditor.

By the Revised Statutes (ch. 196, secs. 12, 13), all the debtor's interest passes by the levy to the creditor, subject only to redemption by paying the sum at which it was appraised, with interest, within one year from the return day of the execution.

The law of June, 1857 (ch. 1964), makes further provision for such redemption, and authorizes a deduction

from the amount to be paid, of the rents and profits received by the creditor, or which he might have received, and with which he is justly chargeable; and section 2 of that act provides that if the parties can not agree as to the amount due for such redemption, the same proceedings may be had as in the case of the redemption of real estate under mortgage.

If, then, the creditor, having obtained the legal title and actual seizin of the land, does not dispossess the debtor, but permits him to remain and cultivate the land; can he rightfully enter, and before severance by the tenant, gather and appropriate to his own use the annual crops raised by such debtor? As the law now stands, the situation of such creditor, so far as this question is concerned, is much like that of mortgagors of real estate. Both have the legal title and the right of immediate possession. In both, the tenant has a right to redeem, by the payment of the debt and interest; and in case of such redemption, both the mortgagee and creditor must account for the rents and profits received by them. In the case of a mortgagor, his possession, so long as the mortgagee does not elect to enter, is regarded as permissive, and bearing, in many respects, a close analogy to a strict tenancy at will (Ang. on Lim. 489); and, therefore, he is not liable to the mortgagee for the rents and profits while in possession. *Chellis* v. *Stearns*, 22 N. H. 315; *Tripe* v. *Marcy*, 39 N. H. 439; *Cavis* v. *McClary*, 5 N. H. 525; *Smith* v. *Moore*, 11 N. H. 62; *Fisher* v. *Giles*, 5 Bing. 421. So it is held that while the mortgagor is permitted to remain in possession, and the mortgagee omits to enter, the mortgagor is, in contemplation of law, taking the rents and profits to his own account. *Wilder* v. *Houghton*, 1 Pick. 89, and cases cited; *Mayo* v. *Fletcher*, 14 Pick. 525. In this case it is held that the assignee of the mortgagor is not liable in trespass for mesne profits accruing between the commencement of the action to foreclose and the time of

Coolidge *v.* Melvin.

taking possession upon the execution. See *Boston Bank* v. *Reed*, 8 Pick. 459. A mortgagor is not, however, entitled to the emblements as other tenants at will are, and he is no better, in this respect, than a tenant at sufferance; and he is not entitled to notice to quit before ejectment. 4 Kent's Com. 156, 174. When left in possession, he is sometimes said to be tenant at will in the strictest sense, not entitled to notice to quit, nor even to reap the crops, as other tenants at will are, because all is liable to the debt, on payment of which the mortgagee's title ceases. *Keech* v. *Hall*, Doug. 21; *Moss* v. *Gallimore*, Doug. 266; *Thunder* v. *Belcher*, 3 East 174, 449. In the last case, the mortgagor is said to be but a tenant at sufferance. In *Beech* v. *Wright*, 1 T. R. 382, 383, it is held that the mortgagor is not entitled to the growing crop, after the will is determined; but the "mortgagee is entitled to the actual possession whenever he pleases;"—he is entitled to the estate as it is, with all the crops growing upon it. *Fisher* v. *Giles*, 5 Bing. 421, recognizes the doctrine of *Keech* v. *Hall*. *Best*, C. J., says a mortgagor resembles a person who has executed a statute or recognizance. Whatever these persons do to give value to the property under pledge, is done for the benefit of the creditor; and he cites *Barden & Withington's Case*, 2 Leonard 54. Where A is bound in a statute to B, and sows the land, and B extends the lands, which are delivered to him in execution, it is adjudged that the conusee shall have the corn sown; the same law in the case of a recognizance.

The estates by statute merchant and statute staple, and also by recognizance in the nature of a statute staple, are all securities for debts acknowledged to be due before a magistrate, mayor of the staple, chief justice, &c., whereby the goods and lands of a person may be seized, and the lands delivered to and held by the creditor till he gets his pay out of the profits. 2 Bl. Com. 160.

So in *Roshway* v. *Bradley*, 2 Conn. 1-5, it is held that

Coolidge *v.* Melvin.

the mortgagor is not entitled to emblements; and it is there held that he is so entirely subject to the will of the mortgagee, that the latter may consider his possession to be lawful, or treat him as a disseizor without notice to quit. In *Wakeman* v. *Banks,* 2 Conn. 245, it is held that the mortgagor is not entitled to emblements, nor accountable for rents, nor accountable for waste, nor entitled to notice to quit, and in no manner resembles a tenancy at will or at sufferance. In Hilliard on Real Property 407, and notes, it is laid down that a mortgagor is not entitled to emblements or notice to quit. So is *Miner* v. *Stevens,* 1 Cush. 485.

In the case, then, of securities upon land, as by mortgage, statutes merchant and staple and recognizance, the persons holding them may enter into the lands and take the growing crops. But they must account for them upon the debts so secured, and, therefore, the labor of the debtor in sowing the crops is not lost to him.

As the law now stands, and since June, 1857, it is the same in respect to lands set off on execution, which is regarded as put in pledge for the security of the debt, to constrain the debtor to fulfill his legal and moral obligation to pay in money, and in default of this, to give the creditor satisfaction in land. So it is expressly regarded in *Fletcher* v. *State Capital Bank,* 37 N. H. 404, and cases cited; and we can see no solid distinction between this case and the security obtained by statute merchant or staple or recognizance, or by way of mortgage. So mortgages and judgment-liens are held the same in this respect. *Bittenger* v. *Baker,* 29 Penn. 60–69, and cases cited.

We are, therefore, brought to the conclusion that the extent upon part of the Chester farm, as the property of Charles Coolidge, is valid as against this plaintiff; and that upon entry by the defendant, under this extent, he would be entitled to the growing crops, and, consequently, that this action can not be maintained. In reaching this

State *v.* Towle.

result, we have assumed that there was no agreement by the defendant that Charles Coolidge should remain in possession, in a way to affect his rights under the extent; and, also, that before and at the time the defendant took the crops, he had entered and taken possession under his extent, although the agreed case is not very explicit on that point.

Whether it would make any difference in the result, if the defendant entered merely to take the crops, and leaving Charles Coolidge still in possession, we have not considered.

There must, therefore, be

*Judgment for the defendant.*