LANG *v.* STOCKWELL.     { Aug. 12, 1875.

*Secret trust—Reservation of use of chattel by vendor.*

Upon the sale of a chattel, it was agreed as part of the bargain that the vendor should still have the right to use the thing sold, in and about his business. *Held,* that such reservation, being inconsistent with an absolute sale, constituted a secret trust, from which fraud as to the creditors of the vendor was an inference of law ; and that the actual intention of the parties would not be inquired into.

TRESPASS, *de bonis*, to recover the value of a horse and wagon. Tried before STANLEY, J. Plea, the general issue, with a brief statement justifying under an attachment. The evidence tended to show, that, prior to March 1, the horse and wagon in question were owned by one McDuffie; that he had been engaged in the lumbering business at Jefferson, in this state, where the plaintiff then resided, and that he and his men had boarded with the plaintiff; that, on said March 4, there was a looking-over between her and McDuffie, and that it was then agreed by and between them that he should let the plaintiff have said horse and wagon on account of the amount then due to her, and that she should allow him one hundred and eighty dollars for them and a harness, on account, and he at that time gave her a bill of sale of them; and on the next day, they were taken from the barn occupied by McDuffie, and where they had been previously kept, and put into the plaintiff's barn, and they were kept there after that. At the time of the sale by McDuffie to the plaintiff, he was boarding with her, and continued to board with her while he remained in Jefferson, he being then about closing up his business; and it was then (at the time of the sale) agreed between the plaintiff and McDuffie that he should have the right to use said horse, wagon, and harness, in about his business, and that in consideration therefor he should pay the taxes on the same. In accordance with this arrangement, said horse was taxed to McDuffie, and he did use the horse, wagon, and harness, as he had occasion, three or four times, to go to Lancaster; and McDuffie testified, on cross-examination, that part of the consideration of the trade was the right he was to have to use the horse, wagon, and harness; that it was part of the trade. There was other evidence introduced by the defendant, tending to show that the plaintiff, after the alleged purchase, denied any ownership in the property of McDuffie, and the plaintiff introduced evidence tending to contradict this evidence of the defendant. The defendant requested the court to instruct the jury, that if, at the time of and as a part of the contract of sale, it was agreed and understood by the parties that McDuffie was to still have and retain the right to use the horse and wagon and harness, that would be a secret trust, and the sale was void; that, as the plaintiff admits, part of the consideration of the sale was, that McDuffie was to retain a right to use the property so long as he might remain in Jefferson, and for an indefinite time, the sale was void, and the defendant had the right to take the same as McDuffie's property; that if McDuffie was to have any right under the bargain with the plaintiff to use or work the horse as part of the consideration or price of the property, the sale was void, and the property remained McDuffie's, and the defendant had the right to attach it. The court declined to give the instructions as requested, but did instruct the jury, among other things, that, if there was any understanding between the plaintiff and McDuffie that the property should be treated as sold, when in fact the arrangement was, that the property was to be McDuffie's, and to be used as he chose to use it and he had used it before, the sale was void; that it does not follow,

as a matter of course, because he was to have the use of said horse, wagon, and harness, and that he was to pay taxes thereon, that there was a secret trust; but these were facts to be considered by the jury as bearing on that question, and were to be considered by them in connection with all the evidence in the case.

McDuffie testified that he had owned the horse in question about two years before the attachment; and, subject to the defendant's exception, the plaintiff was allowed to ask him if he had ever discovered any unsoundness or string-halt, to which he replied he never had. It did not appear that McDuffie had any particular skill in the care or management of horses. There was no substantial difference in the statement of the contract as made by the plaintiff, from that made by McDuffie.

The jury having returned a verdict for the plaintiff, the defendant moves to set aside the same for supposed error in the foregoing rulings and instructions.

The questions of law arising on the foregoing case were transferred to the superior court for determination.

*Wheeler* and *J. H. Benton, Jr.,* for the plaintiff.

*Hobbs* and *Crawford,* for the defendant.

LADD, J. In *Coburn* v. *Pickering,* 3 N. H. 424, the court, RICHARDSON, C. J., say,—"A sale of goods, in order to be considered as made *bona fide* with respect to creditors, must be made without any trust whatever, either express or implied. It is not permitted to a debtor to convey away his goods, by sale, with any secret understanding between him and the vendee, that the goods shall be holden for the benefit of the vendor, in any way whatever. The nature of the benefit reserved in the sale is immaterial. It matters not whether the benefit is to consist in the use of the goods, or in some other favor to be shown by the vendee. Anything of this kind is a trust, and what the law denominates a fraud." This is the doctrine of *Twyne's case,* and rests upon the 13 Eliz., ch. 5, which Lord Coke tells us was simply declaratory of the common law. An examination of all our cases decided since *Coburn* v. *Pickering,* shows most conclusively that there has never been any disposition to relax the rule there laid down. For example: in *Coolidge* v. *Melvin,* 42 N. H. 522, BELLOWS, J., says,— "Any secret trust whatever, either express or implied, by which the property is to be held in any way for the benefit of the vendor, is inconsistent with an absolute sale, and makes it, as matter of law, fraudulent and void as to creditors." *Coburn* v. *Pickering* is our leading case on this subject, and the very thorough and luminous discussion of the whole matter found in that opinion has left little to be done in cases which have since arisen, except to make a correct application of the principles there laid down. 1 Sm. Lead. Cases 63 (American notes to *Twyne's case*). How does that rule apply to the case before

us ?　At the time of the sale of the horse and wagon by McDuffie to the plaintiff, it was agreed between them, and was part of the trade, that McDuffie should have the right to use the property in and about his business, and that, in consideration therefor, he should pay the taxes on the same.　What could be more inconsistent with an absolute sale ?　An unrestricted right of use constitutes the very essence of the idea of property, whether in things real or personal. ' A sale which leaves the right to use the thing sold still in the vendor, without limitation as to time or manner of use, leaves the beneficial property, to all practical intents, where it was before,—in the vendor.

The case states, that, at the time of the sale, McDuffie was boarding with the plaintiff, and continued to board with her while he- was in Jefferson, he being then about closing up his business; and it was then agreed that he should have the right to use said horse, wagon, and harness in and about his business. It may be the fair implication from this, that McDuffie was only to have the right to use the property in and about the business he was then about closing up at Jefferson.　Suppose that be so : how does it alter the case ?　What difference in principle whether he might close up his business, and so terminate his right of use in a week, a month, a year, or not until the property was wholly worn out with using?　I confess I can see none.　The right of use reserved for a single day is, to my mind, as inconsistent with an absolute sale, an unqualified passing of the property, as would be the right to use a year or ten years.　I am therefore of opinion, that here was a trust,—a holding by the vendee for the benefit of the vendor,—which brings the case within the doctrine of *Coburn* v. *Pickering*, and all our cases since ; and, where the trust is shown, fraud is an inference of law that the court is bound to pronounce.　*Coolidge* v. *Melvin*, 42 N. H. 522.　I think the defendant was entitled to the substance of the instructions which he requested.

It now appears, by an amendment of the case, that there was no substantial difference in the statement of the contract as made by the plaintiff from that made by McDuffie, and we are thereupon asked to order judgment for the defendant.　If my views are correct, and there was no evidence at the trial tending to show a different contract from that stated in the case, a verdict should have been ordered on motion for the defendant, because from that contract, showing as it does a secret trust, fraud would be a conclusion of law without regard to the actual motives and intentions of the parties ; but, according to the usual practice of the court, I think we should go no further than to set the verdict aside for error in refusing the instructions asked for, and also in those given.

The testimony of McDuffie, that he had never discovered any evidence of unsoundness or string-halt in the horse, seems to have been inadmissible under the authority of *Spear* v. *Richardson*, 34 N. H. 428.

CUSHING, C. J.　According to the case of *Spear* v. *Richardson*, 34

N. H. 428, I think the evidence of McDuffie excepted to was inadmissible. I do not see how that case can be reconciled with the case of *Willis* v. *Quimby*, 31 N. H. 485 ; but, as the learned judge who delivered the opinion in this case was a member of the court which decided the case of *Spear* v. *Richardson*, it must be understood that the later case in point of time is, in so far as it differs from the other, a revision of it. On this point, therefore, I think the verdict must be set aside.

In regard to the other point, I find great difficulty ; and it being unnecessary to express an opinion at this time, I abstain from doing so.

SMITH, J. The plaintiff took the property, on the next day after the sale, from the barn occupied by McDuffie, where it had been previously kept, and put it into her own barn, where it was kept after that. This was an open and visible change of possession, and one that would naturally result from a *bona fide* sale, and, if there had been no stipulation in the trade, that McDuffie should have the right to use the property afterwards, would unquestionably have given the plaintiff a perfect title to the same. McDuffie, however, boarded with the plaintiff at the time, and continued to board with her while he remained in Jefferson, so that the removal of the property to the plaintiff's barn, while he continued to board with her as before and continued to use the property as before in and about his business, gave his creditors no information that the plaintiff had acquired the property in the horse and carriage, of which exclusive possession is usually the sole evidence. The reservation of the right by McDuffie to use the horse and carriage, was limited only for the purpose of, and during the time he might be engaged in, " closing up his business," which of course would be for an indefinite period, and might last until the property should be worn out. The ownership of property carries with it the right to use it. This right in McDuffie to use this property was clearly inconsistent with the unrestricted right of use in the plaintiff. Lord ELLENBOROUGH held, that a concurrent possession with the assignor is colorable ; that, if the vendor remains in possession of the goods after the sale thereof, the case is not bettered by the vendee's remaining in possession along with him— *Woodall* v. *Smith*, 1 Camp. 333, *Trask* v. *Bowers*, 4 N. H. 309 ; and, unless we are to disregard the numerous decisions in this state upon the subject, commencing with *Coburn* v. *Pickering*, of which I believe there are seventeen, where such sales are held to constitute a fraud in law, the court has no other alternative than to pronounce this sale fraudulent as against McDuffie's creditors.

The verdict must be set aside, and

*A new trial granted.*